[Crim. No. 16496. In Bank. Sept. 5, 1973.]

ln re HERBERT WILLIAM LAW on Habeas Corpus.

## COUNSEL

Richard Rocha, under appointment by the Supreme Court, for Petitioner.

Evelle J. Younger, Attorney General, Edward A. Hinz, Jr., Chief Assistant Attorney General, Doris H. Maier, Assistant Attorney General, Russell Iungerich and Kent L. Richland, Deputy Attorneys General, for Respondent.

## OPINION

**WRIGHT, C. J.**—We issued an order to show cause in response to an application by Herbert William Law, a parolee, for a writ of habeas corpus based upon the contention that he is entitled to release on bail from a "parole hold." The hold was requested by the Adult Authority (Authority) following petitioner's arrest on allegations that he had committed a criminal offense while on parole. ▇ Although petitioner's contention is now moot in these proceedings we deem it to raise a question of broad public interest likely to recur and so reach the issue. (*In re William M.* (1970) 3 Cal.3d 16, 23 [89 Cal.Rptr. 33, 473 P.2d 737].) ▇ We conclude that there is no constitutional or statutory right to bail in this situation.

In 1963 petitioner was convicted of forgery (Pen. Code, § 470) and sentenced to state prison for the term prescribed by law.[1] In 1969 the Authority refixed petitioner's term at nine years and granted parole effective November 3, 1969. On May 8, 1972, petitioner was convicted in a federal district court of aiding and abetting the uttering of a forged check and placed on probation for five years. Such conviction did not, however, result in any action by the Authority.

On June 9, 1972, petitioner was again arrested for a violation of Vehicle Code section 10851 (grand theft auto) and bail for such alleged offense was fixed but he was not released pursuant thereto. On June 29, as a result of this arrest, a parole hold was placed against him and he remained in cus-

---

[1]All references to code sections, unless otherwise indicated are to the Penal Code.

tody.[2] Thereafter, on July 26, petitioner, after a preliminary hearing at which he was represented by counsel, was held to answer in the superior court. Almost five weeks later, on August 29, petitioner was given formal notice by the Authority that no action as to a revocation of parole would occur until the conclusion of the pending criminal charges. On October 12 petitioner was found guilty and placed on probation for a period of five years, one condition of probation being that he serve one year in the county jail. Subsequently, on October 20, the Authority suspended petitioner's parole and ordered him returned to state prison for revocation proceedings. Parole was thereafter revoked and the sentence for the 1963 offense was refixed at maximum.[3]

The question of whether a parolee is entitled to bail while in a parole hold status is of first impression in this state. The right, if it exists at all, must flow from one or more of three possible sources: the Eighth and Fourteenth Amendments to the federal Constitution; article I, section 6, of our state Constitution; or state statutory authority.

In a significant break with earlier holdings the United States Supreme Court in *Morrissey* v. *Brewer* (1972) 408 U.S. 471 [33 L.Ed.2d 484, 92 S.Ct. 2593] held that a parolee is entitled to certain minimum due process protections when the state attempts to revoke his parole. We have heretofore set out at length those portions of the opinion in *Morrissey* we deem to be particularly applicable to revocations of probation in this state and, as stated, *Morrissey* itself mandates certain procedural due process require-

---

[2]A "parole hold" occurs when a parole agent or other representative of the Authority causes a parolee to be restrained in custody independent of any action by the decision-making component of the Authority. The situation occurs (1) when the parole agent believes that the parolee has violated a condition of parole, (2) when the parolee has been arrested on a new criminal charge—a prima facie violation of parole, or (3) when a parolee is completing a local jail sentence during which time the Authority may determine whether to maintain parole status in view of the conviction which resulted in the jail sentence. Common to all three situations is the power of the agent to have the parolee restrained merely by exercising his authority to take the parolee into custody and book him into a local jail or, in the event he is already in jail, prevent him from being released on bail, on his own recognizance or after the expiration of any sentence he may have been required to serve. The agent's authority to restrain the parolee stems from two sources: first, an administrative delegation of statutory power conferred on the Authority to, inter alia, "order returned to prison any prisoner on parole. . . ." (§ 3060; see also, §§ 3040, 3052 and 3056) and second, the status of a parole agent as a peace officer (see § 830.5). (See Robinson, *Parole Holds: Their Effect on the Rights of the Parolee and the Operation of the Parole System* (1972) 19 U.C.L.A. L.Rev. 759.)

[3]At oral argument petitioner waived any contention that the revocation failed to accord the procedural due processes mandated by *Morrissey* v. *Brewer* (1972) 408 U.S. 471 [33 L.Ed.2d 484, 92 S.Ct. 2593]. (See also *People* v. *Vickers* (1972) 8 Cal. 3d 451 [105 Cal.Rptr. 305, 503 P.2d 1313]; *People* v. *Nelson* (1972) 8 Cal.3d 463 [105 Cal.Rptr. 314, 503 P.2d 1322]; *In re Prewitt* (1972) 8 Cal.3d 470 [105 Cal.Rptr. 318, 503 P.2d 1326].)

ments in connection with revocations of parole. (See *People* v. *Vickers* (1972) 8 Cal.3d 451 [105 Cal.Rptr. 305, 503 P.2d 1313].)

To implement the requisite due process the high court in *Morrissey* set forth with particularity a broad scheme of procedures which embraced first a preliminary probable cause hearing and thereafter a more formal revocation hearing. Although the court did not directly deal with the question of bail at any time prior to revocation it clearly indicated that, as a federal constitutional matter, such bail was not contemplated nor mandated. The court spoke in terms of an "arrested" parolee and based the needs for due process on the ground that his conditional liberty had been curtailed. (*Morrissey* v. *Brewer, supra,* 408 U.S. 471, 485 [33 L.Ed.2d 484, 496].) Further, the court stated that the preliminary hearing officer should determine whether there was, in effect, probable cause to believe a violation had occurred and that such determination ". . . would be sufficient to warrant the *parolee's continued detention. . . .*" (*Id.* at p. 487 [33 L.Ed.2d at p. 498]; italics added.)

Thus it is clear that the court had firmly in mind the fact that a parolee would be detained throughout the whole of the revocation process and that this detention was constitutionally permissible. (But see, *Morrissey* v. *Brewer, supra,* 408 U.S. 471, 491 [33 L.Ed.2d 484, 500], Douglas, J., dissenting.) Petitioner does not refer us to any provision of the federal Constitution from which we are able to discern even a suggestion that a parolee charged with a violation while conditionally released on parole, has a right to remain at liberty through a bail procedure similar to that in the case of those charged with but not convicted of a crime.

Article I, section 6, of the California Constitution, upon which petitioner particularly relies, states that "All persons shall be bailable by sufficient sureties, unless for capital offenses when the proof is evident or the presumption [is] great." ▮ This provision was intended to abrogate the common law rule that bail was a matter of judicial discretion by conferring an absolute right to bail except in a narrow class of cases. (See *In re Underwood* (1973) 9 Cal.3d 345 [107 Cal.Rptr. 401, 508 P.2d 721]; *Ex parte Voll* (1871) 41 Cal. 29, 32.) However, it is clear on analysis of both the Constitution and statutory provisions which implement it that the right to bail, while absolute, pertains only to persons incarcerated on a charge of the commission of a criminal offense. (See *Aguilera* v. *California Dept. of Corrections* (1966) 247 Cal.App.2d 150, 153 [55 Cal.Rptr. 292].)

The constitutional provision, although it first states that "All persons" shall be bailable, then makes an exception "for capital offenses when the proof is evident or the presumption [is] great." The phrase "the proof is evident or the presumption [is] great" can be relevant only as a limitation

on the bailable nature of a charged but unproven capital offense; otherwise the proof and presumption would have been conclusively and finally established. The provision thus purports to deal not with all persons in an unlimited sense but rather with all persons charged with criminal offenses as only then does the whole of the language have relevancy. We have heretofore stated that the purpose served by the provision was "fixing bail before trial." (*People* v. *Anderson* (1972) 6 Cal.3d 628, 657, fn. 45 [100 Cal. Rptr. 152, 493 P.2d 880].)

The constitutional provision has been implemented by statutory provisions none of which, however, contemplates bail from restraints imposed after the finality of a judgment of conviction. (See §§ 1268-1292, 1476.)

A parolee's right to relief from restraints of a parole hold cannot arise from the fact that the hold is grounded on conduct which is otherwise charged to constitute a crime for which bail may be available. We have long recognized that an official accusation of a new criminal offense is sufficient grounds for restraining a parolee (*In re Etie* (1946) 27 Cal.2d 753, 756-757 [167 P.2d 203]) and that the *exclusive* jurisdiction over parolees has been vested in the Authority (§ 5077). Thus, to allow bail on the new offense to be grounds for release of a parolee would constitute an infringement upon a proper exercise of the statutorily declared exclusive jurisdiction of the Authority in the parole area. The Authority has a continuing interest in maintaining controls over a parolee, including his return to prison, because of "the real risk that he may not be able to live without committing additional antisocial acts" and may not "adjust to the demands of society. [Citation.]" (*People* v. *Nelson, supra,* 8 Cal.3d 463, 466.)

In conclusion we do not perceive any source of authority, under the federal or state Constitutions or under applicable statutes, in support of the contention that parolees have a right to bail while in custody imposed by a parole hold.

Although the question was not directly raised whether, in a case where a parolee is arrested by reason of the alleged commission of a new criminal offense, the preliminary hearing provided for in our Penal Code in the case of a felony (see §§ 859-883) or the trial itself in the case of a misdemeanor may also serve as the probable cause hearing mandated by *Morrissey* v. *Brewer, supra,* 408 U.S. 471, we nevertheless deem it appropriate to consider the same as the issue was presented at oral argument on the cause.[4]

---

[4]In order to avoid unnecessary confusion we shall herein refer to the administrative proceeding prescribed by *Morrissey* for the purpose of determining the existence of probable cause for a parole violation as a "probable cause" hearing, and the legis-

We consider first the case wherein the suspension or revocation of parole results from the commission or alleged commission of a felony by a parolee. Established procedures insure that at or prior to the preliminary hearing the parolee be advised of the nature of the charges and his entitlement to counsel (§ 859); that the hearing be before an impartial tribunal which, absent defense delays or waiver, will be held within 10 court days of his arraignment (§ 859b); that the parolee be afforded the right to confront and cross-examine adverse witnesses and present witnesses on his own behalf (§§ 865, 866); and that a transcript of the proceeding be prepared and a copy thereof delivered to the parolee (§ 869). A copy of such transcript could also be furnished to the Authority.

It is thus manifest that where the conduct which constitutes a prima facie violation of parole is also independently charged as a new felony the procedures afforded through the holding of a preliminary hearing are inclusive of or may be made to conform to the procedures mandated in *Morrissey.* (See *People* v. *Vickers, supra,* 8 Cal.3d 451, 456-457.) In such instances no purpose would be served by requiring a determination that there exists probable cause to believe that a particular act occurred which constitutes a violation of parole independently of a prior determination of the existence of probable cause of the commission of a felony grounded on the same occurrence. Due process would further require, however, that a parolee have fair notice of the nature and effect of a hearing intended to serve such a dual purpose.

We note moreover that the Authority could conduct a separate probable cause hearing notwithstanding the fact that the alleged parole violation is a charge that the parolee committed a felony for which he would be entitled to the judicial preliminary hearing proceedings outlined above. The hearings mandated by *Morrissey* are administrative in character and the existence, *vel non,* of judicial proceedings which may serve the purpose of the administrative proceeding do not preclude the Authority from conducting its own hearings. The use of the preliminary hearing as the equivalent of a probable cause hearing would, however, in appropriate cases eliminate needless duplication and would preclude the possibility of a parolee being subjected to two proceedings.

In the case when a parolee is accused of a new criminal offense which is charged as a misdemeanor those protections afforded during the course of the trial may in appropriate cases be sufficiently inclusive of the probable cause hearing procedures mandated by *Morrissey* to serve, with proper notice or by agreement between the parolee and Authority, such dual pur-

latively prescribed judicial proceeding for the purpose of determining the existence of probable cause to hold to answer a person accused of a felony as a "preliminary" hearing.

poses. We are constrained to note, however, two difficulties which may preclude effective use of such suggested combined procedure which are not present in the instance when a parolee is charged with a felony and afforded a preliminary hearing.

First, absent waiver or defense delay, trial on a misdemeanor may be postponed as long as 30 to 45 days following arraignment. (§ 1382, subd. 3.) We do not herein adhere to the view that in cases where there has been a substantial lapse of time from arrest to disposition that the mandate of *Morrissey* to the effect that the probable cause hearing be conducted "as promptly as convenient after arrest while information is fresh and sources are available" (*id.* at p. 485 [33 L.Ed.2d at p. 496]) has been satisfied.

Second, unlike the situation which prevails in preliminary hearings, transcripts of the trials of misdemeanors are rarely readily available and, indeed, generally cannot be obtained at all. Thus neither the parolee nor the Authority would have access to an important and perhaps indispensable record. Because of the limitations inherent in the adoption of the trial of a parolee charged with the commission of a misdemeanor as a substitute for the probable cause hearing, the Authority might properly determine to hold the hearing required by *Morrissey* shortly after arrest or arraignment and prior to ultimate disposition of the criminal proceeding.

As there is no provision in law for release on bail from a parole hold, and petitioner is not otherwise entitled to relief, the order to show cause is discharged and the petition for the writ is denied.

McComb, J., Tobriner, J., Mosk, J., Burke, J., Sullivan, J., and Clark, J., concurred.

Respondent's petition for a rehearing was denied October 25, 1973.